## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Dustin Confer, on behalf of himself and all others similarly situated, | )<br>)<br>)<br>) |
| | Demand for Jury Trial |
| | Case No. |
| *Plaintiff,* | COMPLAINT – CLASS ACTION |
| v. | |
| Milwaukee Electric Tool Corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

Comes now Plaintiff Dustin Confer, individually and on behalf of all other persons similarly situated, for his complaint for damages against Defendant Milwaukee Electric Tool Corporation. ("Defendant").

## NATURE OF ACTION

1.    This is a class action claim arising from the deceptive and unconscionable business practices of Defendant in the advertising, packaging, and labeling of organic bonded abrasive wheels ("Defective Product(s)")[1] that were manufactured, produced, distributed, and/or sold by Defendant.

---

[1] Defendant manufactures and/or sells at least 40 different types of organic bonded abrasive wheels, as shown by Defendant's internal documents and which were produced as part of Defendant's Rule 26 disclosures. *See* Case No. 22-cv-2219, "List of organically bonded wheel SKUs Bates labeled Milwaukee 000034-000035." The Defective Products all suffer from the same defect: a failure to include a clear expiration label.

2.    The Defective Product is characterized as an organic bonded abrasive wheel because it is comprised of abrasive materials (e.g., aluminum oxide) that are bonded together with resin. The resin is an organic material that degrades over time and thus leads to the product expiring and failing, without the consumer's knowledge.

3.    Specifically, during the relevant class period, the Defective Products all contain the following defects:

a.    Defendant manufactures the wheels with a polymer compound that is susceptible to oxidation;

b.    Because Defendant's polymer compound is subject to oxidation, it degrades relatively rapidly and becomes brittle within a few short years of manufacture;

c.    The resin used to bond the abrasive absorbs moisture over time;

d.    Because this resin absorbs moisture over time, it deteriorates relatively rapidly and becomes weak within a few short years of manufacture;

e.    Defendant omits these material facts from its consumers, refusing to put them on the packaging or labeling;

f.    Defendant fails to provide an adequate warning that the product has an expiration date; and

g.    Defendant fails to include an expiration date on the label.

4.    During the relevant class period, Defendant sold the Defective Product at retail store locations throughout the state of Kansas, including at Home Depot

where Plaintiff purchased a Defective Product. Even though the Defective Products were made with material that expired, as described above, Defendant sold them as products that were made with material that does not expire.

5.      During the relevant class period, Defendant sold the Defective Product to Plaintiff and other reasonable consumers without adequate advertising, packaging, and labeling that identified that the abrasive wheel product was made with material that expired.

6.      As a result of being made with material that expired, the wheels have a shelf life or expiration date after which they become too brittle and/or weak to safely and reliably use.

7.      Prior to selling its Defective Products, Defendant knew of, or should have known of, their defects.

8.      A leading manufacturer of abrasives cautions: "Using a disc outside of its expiry date *will* lead to disc failure and a high probability of causing severe injury to the operator and anyone nearby. Retailers also have the responsibility not to sell discs that are out of date." (emphasis in the original)[2]

9.      For decades, the Health and Safety Executive Committee states in its Safety in the use of abrasive wheels handbook the following: "All organic bonded wheels for hand-held applications **will bear a use-by date** of three years from the date of manufacture." (emphasis added).

---

[2] Sunland Abrasives. *3 Fascinating Facts About Cutting and Grinding Discs You Might Not Have Known*, June 12, 2020, accessible at https://www.sunlandabrasives.com/3-fascinating-facts-about-cutting-and-grinding-discs-you-might-not-have-known/ (last accessed on August 19, 2022)

10. The Federation of European Producers of Abrasives (FEPA) establishes an industry standard for expiration date or shelf life date for use of three years. United States manufacturers of abrasive wheels recognize FEPA as an industry standard.

11. Similarly, a worldwide trade association, the Organization for the Safety of Abrasives, publishes safety material and literature on the "Product marking *requirements* for bonded abrasives." The Organization mandates that specific inscriptions be added to abrasives: "The date of expiry *shall* at the longest be within 3 years from the date of manufacture. It is expressed as month and year e.g. 04/2023."

12. Another manufacturer of wheels publicly admits that "It has always been Saint-Gobain's recommendation that Resinoid Bonded grinding wheels be used up within 2 years from the date of manufacture."

13. One of Defendant's competitors in the United States, Stanley Black & Decker (selling its product under the label "DeWalt"), publishes a "Bonded Abrasive Safety Guide" that states, "DON'T use a wheel that is past its expiration (EXP) date as marked near center of wheel, if provided."[3] On the wheels' label, DeWalt includes "EXP" and the date of expiration.

---

[3] DeWalt webpage, "Abrasive Safety Guides"
https://bynder.sbdinc.com/m/24673f3f64ee1262/original/DW_Abrasive_Safety_Guide_EN_DOC1.pdf (last accessed on January 13, 2023).

14.     Likewise, two additional competitors of Defendant, Bosch and AvantiPro, include on their abrasive wheel products the bare minimum inscription that states, for example, "EXP 1/2020"[4] and "EXP 4/2011,"[5] respectively.

15.     Industry standards also require Defendant to test its wheels to determine what, if any, expiration date they should have.

16.     Despite all this, Defendant chooses to simply ignore its products' defects, as it does not have a system in place that warns consumers about the expiration date, or a system in place that instructs third-party distributors to remove the Defective Products from the shelves. As a result, Defendant routinely causes expired wheels to be sold to consumers.

17.     These are material omissions and defects that not only caused Plaintiff and the class to suffer economic injuries, but it also subjects consumers to an unreasonable risk of injury or death because Defective Products used after their expiration date fail and cause serious injury to the user and any bystander.

18.     Although this class action is not seeking damages for personal injuries, it is important to highlight the serious injuries these defective wheels cause, as it goes to the difference in value between a Defective Product and a product that does not contain these defects, which is what Defendant led Plaintiff and other reasonable consumers to believe these products were.

---

[4] Bosch webpage, Cutting Wheels https://www.boschtools.com/us/en/boschtools-ocs/cutting-wheels-for-die-straight-grinders-cwdg1m415-27926-p/ (last accessed on January 13, 2023)
[5] Home Depot webpage, Accessories https://www.homedepot.com/p/Avanti-Pro-4-1-2-in-x-1-16-in-x-7-8-in-Thin-Kerf-Metal-Cut-Off-Disc-15-Pack-PBD045063115F/301454110 (last accessed on January 13, 2023)

19.    The following is an example of a consumer that was injured as a result of the defects contained in the Defective Products:



20.    The failure to include an expiration date on the wheel is a material omission that a reasonable consumer would want to know.

21.    Defendant promised, and is still promising, Plaintiff and other consumers a product that is made with materials that do not expire, but instead delivering a product that is made with materials that do expire.

22.    As a result of these defects and material omissions, Plaintiff and the class have suffered actual out-of-pocket damages in one of two ways.

23.    Plaintiff and the class have either purchased wheels that are worthless when they unknowingly purchased a wheel that was already expired.

24.    Or, Plaintiff and the class have purchased a wheel that is worthless because there is no way for a reasonable consumer to tell when the product expires, including if the product has already expired.

25.    That is to say, because there is no expiration date on the Defective Product, Plaintiff and the class, as reasonable consumers, reasonably believed the Defective Product did not expire. But because Defendant makes the products with material that does expire, and conceals when it expires from consumers, these reasonable consumers have paid for a product that they otherwise would not have purchased and can receive no use from it.

26.    In short, Plaintiff and class members did not receive the full, or any, benefit of the bargain.

## **PARTIES**

27.    Plaintiff Dustin Confer is a resident and citizen of the state of Kansas. Plaintiff is a military veteran and is therefore a protected consumer under the Kansas Consumer Protection Act.

28.    Plaintiff brings this action on his own behalf and as a representative of a class of similarly situated persons who purchased a Defective Product that was manufactured, produced, distributed, and/or sold by Defendant. This matter arises out of acts, errors and omissions committed by the Defendant against Plaintiff causing him and the putative class to suffer economic injury.

29.    Plaintiff brings this action on his own behalf and as a representative of a class of similarly situated persons to recover damages for violations of the Kansas

Consumer Protection Act, Kan. Stat. Ann. §50-623 *et seq.*, among other claims, for economic and injunctive relief against Defendant which manufactured, tested, distributed, promoted and sold the Defective Product.

30.     Plaintiff is a "person" and has purchased one or more of the Defective Products in a "sale" within the last two years, as those terms are defined in K.S.A. §50-623 *et seq*. At the time the Defective Product was purchased, Plaintiff was unaware that the product was defective and that the product was not fit for the ordinary purposes for which the product is used in that the product was made with defective material that expires, and there was no way for a reasonable consumer to know this defect exists, let alone when the defective material expires, including if it had already expired at the time of purchase.

31.     This existence of this defect and the expiration date are material facts that a reasonable consumer would consider when making a purchase, given that, as described above, these products cannot be safely or reliably used once they expire.

32.     Plaintiff, on behalf of himself and the putative class, seeks a refund for monies paid as a result of his purchase of the Defective Product, and in the alternative seeks the difference in value between the Defective Product as is, and as represented. Plaintiff further seeks injunctive relief, enjoining Defendant from selling the Defective Product without a clear expiration warning and label.

33.     Defendant Milwaukee Electric Tool Corporation is incorporated in the state of Delaware, has its principal place of business in Brookfield, Wisconsin, and is registered in the state of Kansas and can be served at Corporation Service Company,

2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614. Defendant is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Product.

## JURISDICTION AND VENUE

34.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiff brings this action on behalf of a class which numbers in the thousands, (2) Plaintiff (Kansas) and Defendant (Wisconsin) are citizens of different states, and (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d). Plaintiff is bringing a putative nationwide class that includes all people that purchased a Defective Product. On information and belief, Defendant has sold millions of Defective Products over the last five years throughout the United States. Each disc costs approximately $5.00. Plaintiff is seeking a refund for monies paid plus injunctive relief, and attorney's fees. As a result, the amount in controversy easily exceeds $5,000,000.00 ($5 x 5 million wheels sold over the last five years = $25,000,000)

35.    This Court has personal jurisdiction over Defendant in that Defendant transacts business within the state of Kansas and committed one or more tortious acts within the state of Kansas.

36.    Defendant transacted business and/or committed tortious acts within the state of Kansas. Defendant designs, manufactures, processes, distributes, installs, uses, and/or sells dangerous and/or defective products in Kansas. Defendant

placed the Defective Product and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Kansas from which Plaintiff's claims arise.

37.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that the purchase of the Defective Product by Plaintiff took place in Johnson County, Kansas.

## FACTUAL ALLEGATIONS

38.   The Defective Product made the subject of this suit, which is manufactured, produced, distributed, and/or sold by Defendant, is unreasonably dangerous.

39.   Defendant manufactures, produces, distributes and/or sells at least 40 different types of the Defective Product. *See supra* fn. 1. Organic bonded abrasive wheels, such as the Defective products at issue here, are used to cut metal and concrete. The wheels are attached to power tools (e.g., angle grinders, chop saws) that spin at speeds in excess of 4,365 RPM to 21,000 RPM:





40.    Plaintiff purchased a Defective Product, and specifically a 3-inch metal

cut-off wheel (Item # 49-94-3000 – pictured below), on March 30, 2021, at Home Depot

located at 20025 W. 154th Street, Olathe, Kansas 66062. Plaintiff is a consumer and

was involved in a consumer transaction when he purchased the Defective Product for personal, family, household, and/or business purposes.



41.     The Defective Product Plaintiff purchased is an organic bonded abrasive wheel. As shown above, it does not have an expiration date on it, nor is there any warning alerting Plaintiff that the Defective Product expires.

42.     Defendant concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff, in Defendant's advertising, packaging, labeling or otherwise that these products were defective, as described above.

43.     The Defective Products are not fit for the ordinary purposes for which the products are used in that they cannot be safely or reliably used because they contain defective material which expires. There is no way for a reasonable consumer to know these products expire, including when they expire and if they have already

expired. Simply put, Plaintiff and the Class are left in the dark about material facts (i.e., the expiry date) in violation of industry standards.

44.     The existence of this defect and the expiration date are material facts that a reasonable consumer would consider when making a purchase, given that, as described above, these products cannot be safely or reliably used once they expire.

45.     As a result, these products are worthless because consumers, including Plaintiff, cannot use them without subjecting themselves to an unacceptable probability of harm, injury, maiming, mutilation, and/or death. Plaintiff is unable to use the Defective Product because he does not know if it has already expired, or if the expiration date is imminent, and thus the Defective Product is worthless and he is unable to receive the benefit of his bargain.

46.     Defendant knew of the products' defects yet failed to disclose them to Plaintiff and all other similarly situated customers.

47.     Defendant had the capability and means to create an alternative label that clearly disclosed the defect, as well as provide and warn about the expiration date, yet it failed to do so.

48.     As described above, industry standards required Defendant to include a clear expiration date on the label of the Defective Products.

49.     On information and belief, Defendant is currently selling abrasive wheels that have already expired. The Defective Products are sold in thousands of retail stores around the country, including at The Home Depot, Sutherlands, Ace Hardware, among others. On information and belief, several of these stores continue

to sell expired abrasive wheels to customers and/or have expired wheels on Defendant's shelves waiting to be purchased. Thus, the risk of a customer purchasing a worthless expired or nearly expired wheel is imminent and, absent injunctive relief, will continue to occur in the future.

50.    Buried in the ring of some of Defendant's Defective Products is a combination of numbers and a letter, e.g.: "V    2022."



51.    Upon information and belief, this is the "expiry date," and an admission by Defendant that the Defective Products expire, and it had knowledge of same. Yet, Defendant failed to disclose the meaning to consumers. No reasonable customer could understand or know that this is an expiration date.

52.    Despite being misled by Defendant's deceptive advertising, packaging, and labeling, Plaintiff wishes to continue purchasing the Defective Product due to, among other considerations, convenience, and availability. However, absent injunctive relief to prevent Defendant from selling abrasive wheel products without

clear and understandable advertising, packaging and/or labeling in the future, Plaintiff will be unable to rely with confidence on the information provided to ensure that abrasive wheel products purchased from Defendant are not expired or nearly expired at the time of purchase and used prior to expiration.  While Plaintiff has some belief as to a possible meaning of the combination of ambiguous numbers on the face of the Defective Product, he lacks knowledge of Defendant's precise business practices and has doubts regarding how the numbers provided on the Defective Product can be accurately read and interpreted or may be read and interpreted in the future. This uncertainty, in combination with the desire to continue to purchase abrasive wheels from this Defendant in the future constitutes an ongoing injury that can only be remedied through the granting of injunctive relief and preventing Defendant from selling abrasive wheel products without an easily read and understood expiration date located on the face of the product.  In addition, other class members will continue to purchase Defendant's Defective Product near to or after the expiration date without knowledge that the product is, or is about to, expire.  Therefore, an award of monetary damages alone will not sufficiently remedy the continuing future harm caused by Defendant's deceptive practices.

## CLASS ACTION ALLEGATIONS

53.   Plaintiff brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of himself and the following class of similarly situated persons: all persons who purchased a Milwaukee brand organic bonded abrasive wheel in the United States:

a. A "Nationwide Class" based on claims of unjust enrichment and/or breach of implied warranty consisting of all customers who purchased any of the Defective Products in the United States within the applicable statute of limitations; or

b. A "Kansas Sub-Class" based on claims brought under the Kansas Consumer Protection Act and for unjust enrichment, and/or breach of implied warranty consisting of all persons who purchased any of the Defective Products in the state of Kansas for personal, family, household, business, or agricultural purposes within the applicable statute of limitations period.

54.    Excluded from each Class or Sub-Class is Defendant, including any parent, subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from the Class or Sub-Class are those claiming they have suffered a personal injury as result of the Defective Product.

55.    The proposed Nationwide Class, or Kansas Sub-Class meet all requirements for class certification. The Class or Sub-Classes satisfy the numerosity standards. The Class or Sub-Classes are believed to number in the thousands of persons. As a result, joinder of all Class or Sub-Class Members in a single action is impracticable. Class or Sub-Class Members may be informed of the pendency of this Class Action by published and broadcast notice.

56.     There are questions of fact and law common to the Nationwide Class, or Kansas Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class or Sub-Class arising from Defendant's actions include, without limitation, the following:

      a.     Whether the Defective Products contain the defects described herein;

      b.     Whether the shelf life or expiration date of the abrasive wheel is a material fact in the purchasing of abrasive wheel products such as the Defective Product sold by Defendant;

      c.     Whether, in marketing and selling the Defective Product, Defendant failed to disclose the dangers and risks of the Defective Product;

      d.     Whether Defendant failed to disclose and/or concealed the material fact that the Defective Product had a shelf life or expiration date;

      e.     Whether Defendant failed to warn adequately of the dangers of using the Defective Product after its expiration date or shelf life;

      f.     Whether Defendant knew or should have known that using the Defective Product after its expiration date or shelf life can cause it to fail and lead to serious injuries;

      g.     Whether Defendant adequately tested the Defective Product prior to distribution and sales in the market place;

h.  Whether Defendant continued to manufacture, market, distribute, and sell the Defective Product notwithstanding its knowledge of the products' dangerous nature and risks of expiration;

i.  Whether Defendant knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Defective Product from the consuming public; and/or

j.  Whether Defendant's conduct violated the Kansas Consumer Protection Act.

57.  The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

58.  A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members or Sub-Class Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Nationwide Class Members, or Kansas Sub-Class Members to protect their interests.

59.  The claims of Plaintiff are typical of the claims of members the Nationwide Class and the Kansas Sub-Class.  The labels and packaging of products purchased by Plaintiff was identical to the labels and packaging of products

purchased by Nationwide Class and Kansas Sub-Class members. Based upon information and belief, none of the abrasive wheel products sold by Defendant provided a clearly identified expiration date on the label or packaging of the product. Therefore, the information provided by Defendant to Plaintiff and all Nationwide Class or Kansas Sub-Class members was identical.

60.     Plaintiff is an adequate representative of the Nationwide Class and Kansas Sub-Class because he is a member of both Classes and his interest does not conflict with the interests of the members of the Nationwide Class or Kanas Sub-Class he seeks to represent. The interests of the members of the Nationwide Class or Kansas Sub-Class will be fairly and adequately protected by the Plaintiff and his undersigned counsel, who have extensive experience prosecuting complex class action litigation.

61.     Plaintiff seeks a refund of monies paid as a result of his purchase of the Defective Product, that occurred following Defendant's wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Product. In the alternative, Plaintiff seeks the difference between the value of the Defective Product as is, and as represented.

62.     Plaintiff specifically excludes from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Product because it failed when used after the expiration date. This class action seeks only the economic and injunctive

relief requested herein to which class members are entitled under the Kansas Consumer Protection Act, and other claims pled.

63.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Nationwide Class, or Kansas Sub-Class who suffered harm to bring a separate action since the Defective Product costs less than twelve dollars individually. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members, or Kansas Sub-Class Members.

64.     Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

65.     Class action treatment is appropriate in this case because Defendant acted, or refused to act, in a manner that was generally applicable to – and often identical to – grounds that are applicable to each member of the Nationwide Class or Sub-Class.  All members of the Nationwide Class, or Kansas Sub-Class received the same information provided on the labels and packaging of the Defective Products sold by Defendant.

66.     Notice can be provided to Class Members or Sub-Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

**CLAIMS FOR RELIEF**

**COUNT I – KANSAS CONSUMER PROTECTION ACT**

67. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

68. The acts and practices engaged in by Defendant, and described herein, constitute deceptive and/or unconscionable business practices in violation of the Kansas Consumer Protection Act, K.S.A §50-623 *et seq.*

69. Defendant engaged in unlawful practices including willful deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts—specifically, the failure to include a clear expiration date—in connection with the sale, distribution or advertisement of the Defective Product violation of K.S.A. §50-626 and §50-627.

70. Plaintiff purchased the Defective Product, a product that was falsely represented, as stated above, in violation of the Kansas Consumer Protection Act and as a result Plaintiff suffered economic damages in that the product he purchased was worth less than the product he thought he had purchased had Defendant not omitted material facts. And, Plaintiff is no longer able to use the product he purchased, depriving him of the benefit of the bargain. This is because, as described above, because of the defects and Defendant's omissions, there was no way for Plaintiff or other reasonable consumers to know if the product had already expired. Therefore, there is no way for them to know if the product can be safely or reliably used.

71.    At the time of purchase, Plaintiff, and other reasonable consumers, had no information to suggest that the Defective Product had an expiration date that, after which, the product would become worthless due to the risk of harm from giving way, cracking, splitting, exploding, or failing with reasonably anticipated use.

72.    Plaintiff and the Kansas Sub-Class acted as reasonable consumers would in light of all circumstances.

73.    Defendant's actions and omissions would cause a reasonable person to enter in the sale and transaction that resulted in damages to Plaintiff and the Kansas Sub-Class.

74.    As a result of Defendant's actions and omissions, Plaintiff and the Kansas Sub-Class suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of the monies paid as a result of their purchases.

75.    Plaintiff and the Kansas Sub-Class also seek injunctive relief, enjoining Defendant from selling the Defective Product without a clear and unambiguous expiration date.

76.    At the time of Defendant's design, manufacture, processing, distribution, sale and/or use of the Defective Product, Defendant knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and

safety of others by intentionally omitting and concealing material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Kansas Sub-Class.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages in excess of the jurisdictional limit as determined at trial, punitive damages, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – UNJUST ENRICHMENT

77. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

78. Plaintiff and the Nationwide Class and/or Kansas Sub-Class members purchased products from the Defendant that they would not have purchased had they known that the products could not be safely or reliably used, due to the defects and omission of any expiration date, as further described above.

79. The Defendant was therefore unjustly enriched at the expense of and to the detriment of the Plaintiff and the Class.

80. Plaintiff and the Nationwide Class and/or Kansas Sub-Class members are therefore entitled to restitution from the Defendant, and seek an order requiring the Defendant to disgorge all profits, benefits and other compensation the Defendant obtained from the sale of these products.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT III – BREACH OF IMPLIED WARRANTY

81.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

82.     Defendant is a merchant with respect to the sale of the Defective Products purchased by Plaintiff.

83.     Defendant, by selling the Defective Products, impliedly warranted that the product was merchantable with respect to goods of that kind.

84.     Defendant sold the Defective Product to Plaintiff through a retail store location in Kansas, as identified above.

85.     The Defective Product sold by Defendant to Plaintiff did not conform with the implied promises made with respect to the labels and packaging that accompanied the product, including that they could not be safely or reliably used.

86.     The products were defective, as described above, and because of these defects and Defendant's refusal to disclose that they expire and to give the date of expiration, Plaintiff and other purchasers had no way to use the products safely because they had no way of knowing when the products expired, including whether the products had already expired when purchased.

87.     As a result of the failure to provide a clearly marked or identified expiration date on the Defective Product or its packaging, and because of the defects

as described above, the Defective Products were not merchantable and Defendant breached its implied warranty of merchantability with respect to the Defective Products.

88.    Had Plaintiff known that the Defective Products could not be safely or reliably used, due to the defects and omission of any expiration date, as further described above, he would not have purchased them. As a result of Defendant's breach of implied warranty, Plaintiff Hammack and the Nationwide Class and/or Kansas Sub-Class members have suffered economic.

89.    Defendant was provided with notice, pursuant to K.S.A. §84-2-607(3)(a), and demand was made by Plaintiff on behalf of himself and the putative class via certified mail which was received by Defendant's registered agent on June 15, 2022. Additionally, Defendant knew about the defect, making notice unnecessary.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, request relief and judgment against Defendant as follows:

a.    That the Court enter an order certifying the Class, appointing Plaintiff as a representative of the Nationwide Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b.     Alternatively, that the Court enter an order certifying the Kansas Sub-Class, appointing Plaintiff as a representative of the Kansas Sub-Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Kansas Sub-Class;

c.     For a judgment against Defendant for the causes of action alleged against it;

d.     For damages in an amount to be proven at trial;

e.     For appropriate injunctive relief, enjoining the Defendant from selling the Defective Product and ordering it to warn consumers that the Defective Product expires;

f.     For attorney's fees;

g.     For Plaintiff's costs incurred; and

h.     For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable in Kansas City, Kansas.

Dated January 24, 2023.

Respectfully submitted,

HUMPHREY, FARRINGTON, & McCLAIN, P.C.

*/s/ Paul D. Anderson*
Paul D. Anderson KS Federal Bar #78899

221 W. Lexington, Suite 400
Independence, Missouri 64050
Telephone:   (816) 836-5050
Facsimile:   (816) 836-8966
pda@hfmlegal.com
Attorneys for Plaintiff and the Putative Classes

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via the Court's electronic filing system this 24th day of January, 2023.

*/s/ Paul D. Anderson*
**ATTORNEY FOR PLAINTIFF**