## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DUSTIN CONFER**, on behalf of himself and all others similarly situated | ) ) | |
| **Plaintiff,** | ) ) | **Case No. 2:23-cv-02028** |
| **v.** | ) ) ) | |
| **MILWAUKEE ELECTRIC TOOL CORP.,** | ) ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S SUGGESTIONS IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................... 4

   A.  Pre-Litigation Work ................................................................ 4

   B.  Litigation ................................................................................. 6

III.  SETTLEMENT TERMS ................................................................... 7

   A.  Settlement Class Definition .................................................... 7

   B.  Claims-Made Cash Payments ................................................. 8

   C.  Injunctive Relief ..................................................................... 9

   D.  Settlement Class Release ........................................................ 9

   E.  Notice and Administrative Costs .......................................... 10

   F.  Right to Object and Opt Out ................................................. 11

   G.  Attorney's Fees and Expenses and Plaintiff's Service Award ........................ 11

IV.    THE COURT SHOULD CERTIFY THE NATIONWIDE SETTLEMENT
CLASS ................................................................................................................ 11

   A.  Rule 23(a)(1): The Numerosity Requirement is Satisfied ............................. 12

   B.  Rule 23(a)(2): The Commonality Requirement is Satisfied ........................... 13

   C.  Rule 23(a)(3): The Typicality Requirement is Satisfied ................................ 14

   D.  Rule 23(a)(4): The Adequacy Requirement is Satisfied ................................. 15

   E.  Rule 23(b)(3): The Predominance and Superiority Requirements are Satisfied
       ..................................................................................................................15

V.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT
       ..................................................................................................................18

   A.  The Settlement was fairly and honestly negotiated after extensive litigation,
       discovery, court-ordered mediation, and lengthy and painstaking arms-length
       negotiations. ..................................................................................................... 21

   B.  There are Serious Questions of Law and Fact that Place the Ultimate Outcome
       of the Litigation in Doubt, and the Value of an Immediate Recovery Outweighs
       the Mere Possibility of Future Relief After Protracted and Expensive
       Litigation. ........................................................................................................ 22

   C.  Plaintiff's Counsel Judge the Settlement as Fair and Reasonable. ............... 25

VI.    THE COURT SHOULD APPROVE THE NOTICE PLAN AND APPOINT
SIMPLURIS AS         THE         SETTLEMENT         ADMINISTRATOR
       27

   A.  The Proposed Notice Is Accurate and Informative ......................................... 29

VII.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED SETTLEMENT CLASS
       COUNSEL ......................................................................................................... 30

VIII.    CONCLUSION ............................................................................................. 31

Plaintiff Dustin Confer (hereinafter, "Plaintiff" or "Settlement Class Representative"),[1] by and through his attorneys, submits the following Memorandum of Law in Support of his Unopposed Motion for Preliminarily Approval of Proposed Class Action Settlement (the "Motion"). This Memorandum is filed by Plaintiff's counsel who are advised by counsel for Defendant Milwaukee Electric Tool Corp. (hereinafter, "Defendant") that they do not oppose Plaintiff's Motion.

## I.    INTRODUCTION

Pursuant to his Motion, Plaintiff seeks preliminary approval of the Parties' class action settlement agreement (the "Agreement"). Subject to Court approval, the Agreement resolves all of Plaintiff's claims against Defendant as well as the claims of all class members ("Settlement Class") who do not opt out as specified in the Agreement. The amount of the Settlement is $1,250,000.00, which is inclusive of all costs, attorney's fees, service awards, and administrative costs incurred notifying the Settlement Class, establishing and maintaining a website, implementing the Agreement, and processing claims.

The proposed Agreement resolves claims arising from Defendant's business practices in advertising, packaging, and labeling organically bonded abrasive wheels (the "Covered Products")[2] that Defendant distributed and/or sold.

---

[1] This Memorandum incorporates by reference the definitions in the Settlement Agreement, and all terms defined therein shall have the same meaning as set forth in the Settlement Agreement unless otherwise defined herein.

[2] The Covered Products are identified in Exhibit A to the Agreement, and include 45 different types of Milwaukee-branded bonded abrasive wheels.

Specifically, Plaintiff alleges that Defendant sold the Covered Products without adequate advertising, packaging, and labeling that identified that the wheel had a shelf life or expiration date after which the product could not be safely used due to the risk that the product may give way, crack, split, explode, or fail if used after its shelf life.

Defendant denies these allegations. Representative Plaintiff sought relief under the Kansas Consumer Protection Act (K.S.A. § 50-623, *et seq*.) and the Kansas common law claims of unjust enrichment and breach of implied warranty of merchantability, seeking to certify a nationwide class of consumers. (Doc. 1.) The proposed Agreement provides for the relief sought.

After successfully defeating Defendant's motion to dismiss, (Doc. 31), conducting written discovery, and exchanging documents, Plaintiff negotiated a nationwide class settlement. These settlement negotiations occurred over the course of a full-day mediation with mediator Thomas Bender of Horn, Aylward & Bandy. These efforts have culminated in a settlement that provides meaningful monetary and injunctive relief for the class members.

The proposed settlement provides numerous enhancements that will protect class members, future purchasers, and the public at large. Specifically, Defendant has agreed to change its practices relating to the labeling, packaging, and/or marketing of its bonded abrasive wheels. First, Defendant will put a date code on the Covered Products or Covered Products' label or packaging to improve the awareness and meaning of the expiration dates on the Covered Products. Second,

2

Defendant will add, "Don't use past the expirdation (EXP) date" in its relevant tool operator manuals. Third, Defendant will modify its website so that consumers will be educated about the meaning of the date code on the Covered Products. Defendant will begin the process of implementing these changes six (6) months after the Court's Final Approval Order and will be implemented in the ordinary course as new Covered Products are manufactured and new labeling is created.

In addition to this injunctive relief, class members who purchased any of the Covered Products during the Class Period[3] and submit a Claim Form may receive a cash payment, which is broken down into two tiers. Under Tier 1, class members without proof of purchase may receive a payment of up to $2.50 per unit purchased up to eight units for a maximum amount of $20.00 per household. Alternatively, under Tier 2, class members with proof of purchase may receive a payment equal to the total amount of such purchases up to a maximum amount of $100.00.

As further outlined below, the proposed settlement is fair, adequate, and reasonable, and should be preliminarily approved under Fed. R. Civ. P. 23(e). Additionally, the proposed Settlement Class should be certified for settlement purposes because all the requirements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. The proposed Notice Program, which consists of direct emails and digital notice, is designed to reach at least 70 percent of the Settlement Class and will adequately advise class members of the terms of this Agreement and their rights thereunder, in compliance with due process and all other applicable laws.

---

[3] "Class Period" means January 1, 2017 through the entry of the Preliminary Approval Order.

As discussed more fully below, the settlement clearly achieves the Plaintiff's litigation objectives and easily meets the requirements for preliminary approval. Simply put, the settlement provides benefits that the Settlement Class could have achieved at trial. The settlement also provides substantial relief—changed practices and injunctive relief—that likely would not have been available through a trial. Its terms should therefore be submitted to the Settlement Class for their reaction, and a fairness hearing scheduled to determine whether the settlement warrants final approval.

Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Agreement, provisionally certify the Settlement Class, provisionally appoint Humphrey, Farrington, & McClain, PC as Settlement Class Counsel and Plaintiff Dustin Confer as Settlement Class Representative, appoint Simpluris as the Settlement Administrator, approve the Notice Program and authorize dissemination of notice to class members, and schedule a Final Approval Hearing and related events.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  **Pre-Litigation Work**

This case arose from an abrasive wheel failure and ultimately the successful completion of a similar class action settlement against a separate abrasive wheel supplier, Stanley Black & Decker. *See Dinges v. Stanley Black & Decker (U.S.), Inc.* (16th Circuit Court, Jackson County, Missouri, Case No. 2116-cv-12037). Declaration of Paul D. Anderson ("Anderson Decl.") *Id.* ¶ 3, attached. Following this litigation, Plaintiff's counsel learned that other suppliers, including Defendant, were engaging

4

in the same allegedly deceptive practices, and selling abrasive wheels that lacked a clear warning about the meaning of the date imprinted on the wheel. *Id.* ¶ 4.

Although Plaintiff's counsel was able to utilize some of the knowledge gained from the *Stanley Black & Decker* class action settlement, Plaintiff's counsel was still required to do extensive pre-litigation work, including consulting with various engineers, material scientists, and warning experts about the products sold by Defendant. Counsel's investigation and research concluded that unbeknownst to consumers, bonded abrasive wheels have a shelf-life. The compounds begin to break down over a period of time, rendering them susceptible to cracking, breaking, and/or disintegration. If the bonded abrasive wheels crack, break, or disintegrate, this could be highly dangerous to consumers when the product is in use because the abrasive wheels are attached to power tools (e.g., chop saws and grinders) which cause the wheels to spin at a very high velocity so that they can grind and cut through metal, steel, and other materials. If the abrasive wheel is used after the date placed on the wheel by the manufacturers, Plaintiff claims there is a substantial risk that the product could come apart and seriously injure the consumer and anyone within the vicinity of the power tool.

After extensive pre-litigation work including identifying the types of products sold, the potential scope and size of the putative class, and legal research relating to the certification of a consumer class such as this, a putative Class Action Complaint was drafted along with initial discovery requests. After the Complaint was filed, a litigation demand was sent to Defendant on June 13, 2022.

## B. <u>Litigation</u>

On June 13, 2022, Plaintiff originally commenced this consumer protection class action. *See* Doc. 1, Case No. 22-cv-02219-HLT-ADM. Thereafter, Defendant filed a motion to dismiss on August 15, 2022 (*Id.* at Doc. 7). Plaintiff opposed this motion on September 27, 2022 (*Id.* at Doc. 14), and Defendant filed its reply on October 19, 2022. (*Id.* at Doc. 15). Subsequently, the parties conducted the Rule 26 conference, exchanged Rule 26 disclosures, negotiated a protective order, and attended a scheduling conference with the Court.

On November 30, 2022, Judge Teeter granted Defendant's motion to dismiss without prejudice, and the case was administratively closed. (*Id.* at Doc. 26, p. 2, "The Court realizes that this dismissal stems from a pleading deficiency that Plaintiff may be able to overcome.").

Accordingly, Plaintiff corrected the pleading deficiency, and refiled the operative Complaint on January 24, 2023, that is now before this Court. (Doc. 1). The parties engaged in another round of motion practice, with the Defendant filing a motion to dismiss. (Doc. 11). Plaintiff opposed this motion on April 14, 2023 (Doc. 16), and Defendant filed its reply on April 26, 2023 (Doc. 19). After the motion was fully briefed, this Court denied Defendant's motion on July 10, 2023. (Doc. 31).

While the briefing was ongoing, the parties conducted a Rule 26 conference and attended a scheduling conference with the Court. The parties also recognized that an early mediation may be fruitful. The parties selected Thomas Bender as the mediator and conducted a full-day mediation on July 17, 2023 (Doc.33). In preparation for this mediation, Plaintiff conducted discovery relating to Defendant's

6

sales, annual revenue, and the scope of the putative class. Similarly, Defendant conduct discovery relating to Plaintiff's purchase and use of the products. Anderson Decl. ¶ 6.

Ultimately, after extensive arms-length negotiations, the parties were able to reach a settlement in principle at mediation on July 17, 2023. (Doc. 32). After additional negotiations, the parties entered into a term sheet on July 31, 2023. (*Id.*). Over the course of the next two months, the parties began the work of drafting and negotiating a comprehensive settlement agreement. The process of documenting the settlement with a formalized settlement agreement began after an agreement was reached and continued until the agreement was fully executed on September 21, 2023. *See* **Exhibit 1**, Settlement Agreement, attached to the Anderson Decl. Several drafts were exchanged and multiple telephone conferences took place between the parties throughout this time period. Anderson Decl. ¶¶ 7-8.

## III.   SETTLEMENT TERMS

Defendant has agreed to pay $1,250,000.00, inclusive of all cash payments, service award payment, administrative expenses, costs, and attorney's fees to fulfill its obligations pursuant to the settlement agreement ("Settlement Fund").

### A. <u>Settlement Class Definition</u>

The Settlement Class is defined as:

[A]ll Persons who purchased one or more Covered Products at retail in the United States and its territories during the Class Period. Excluded from the Settlement Class are: (i) Defendant and its employees; (ii) any Person who properly and timely opts out pursuant to this Agreement; (iii) federal, state, and local governments, including all agencies and subdivisions thereof (but employees thereof are not excluded); and (iv) any judge who presides over the

7

consideration of whether to approve the settlement of this class action and any member of their immediate family.

Exhibit 1 at § 2.28.

Under the terms of the Agreement, the Class Period is from January 1, 2017, through the date preliminary approval is granted. *Id*. at § 2.6.

### B. Claims-Made Cash Payments

Defendant has agreed to pay cash benefits to all class members that submit a valid Claim Form ("Benefit Amount"). *Id*. at § 2.3. Settlement Class members who submit a Claim Form will have two options to receive cash payments.

Under the first option ("Tier 1"), Defendant will provide, without proof of purchase, a cash payment of up to $2.50 per unit purchased up to eight (8) units total for a maximum amount of $20.00 per household. *Id*. at § 3.6(i).

Alternatively, under the second option ("Tier 2"), Defendant will provide, with proof of purchase, a cash payment equal to the total amount of such purchases up to a maximum benefit amount of up to $100.00. *Id*. at § 3.6(ii).

If the calculations in Tier 1 and Tier 2 would cause the total Benefit Amounts to exceed $625,000, the Benefit Amounts will be reduced pro rata so that the maximum settlement amount is not exceeded. *Id*. at § 3.6(iii).

Conversely, if the the calculations in Tier 1 and Tier 2 do not equal or exceed $625,000, then the remaining funds, exclusive of attorney's fees, expenses/costs and service award, shall be distributed equally among all Participating Claimaints so that no Settlement Funds revert back to Defendant. *Id*. at § 3.6(iv).

### C. Injunctive Relief

Notably, in addition to cash payments, Defendant is also obligated to implement numerous changed business practices in the form of injunctive relief that will protect class members, future consumers, and the public. While not recognized in a dollar amount, the changed business practices Defendant is obligated to undertake have substantial monetary and safety value. *Id*. at § 4.

Specifically, Defendant will be required to make changes to the labeling or marketing of the Covered Products to improve consumers' awareness of the meaning of the date on the Covered Products in the future. *Id*. at § 4.1. Additionally, Defendant will be required to add "Don't use past the expiration (EXP) date" in its relevant tool operator manuals. *Id*. at § 4.2. Lastly, Defendant will be required to explain on its website the meaning of the date on the Covered Products. *Id*. at § 4.3. These business practice changes, although not reduced to a dollar figure, have substantial value because they will lead to*, inter alia*, more clarity on the products in the market and will help to prevent consumer injuries. These are all changes that may not have been achievable absent a settlement.

### D. Settlement Class Release

The class-wide release is tailored to the allegations in this Action. Upon the Effective Date, Settlement Class members who do not submit a valid and timely Opt Out shall release the following claims against the Released Parties:

> [A]ny claim, liability, right, demand, suit, matter, obligation, lien, damage, punitive damage, exemplary damage, penalty, loss, cost, expense, debt, action, or cause of action, of every kind and/or nature whatsoever whether now known or unknown, suspected or unsuspected, asserted or unasserted, latent or

patent, which any Releasing Party now has, or at any time ever had, regardless of legal theory or type or amount of relief or damages claimed, which: (i) in any way arises out of, is based on, or relates in any way to representations or omissions pertaining to the expiration, shelf-life, or other date on or regarding the Covered Products, including how the date is determined, its length, and what it means; and/or (ii) is asserted in the Complaint filed in this Action. However, Released Claims shall not include any claims for personal injury.

Notably, Settlement Class members maintain their right to pursue personal injury claims.

### E. <u>Notice and Administrative Costs</u>

The Settlement Fund will pay for the costs of giving notice to the class and the costs of settlement administration. *See* Ex. 1 at § 12.2. Simpluris Inc. ("Simpluris") has been selected to provide notice to the Settlement Class and administer the settlement. *See* **Exhibt 2**, Declaration of Jacob Kamenir – Senior Director of Notice at Simpluris. Simpluris was the administrator for the *Stanley Black & Decker* class-action settlement, so its expertise gained during that administrative process will be especially helpful here. Simpluris was also appointed as the administrator for a similar class action pending in the Western District of Missouri in front of the Honorable Roseann A. Ketchmark. *See Tuter v. Freud America, Inc.*, Case No. 4:22-cv-00282, Preliminary Approval Order, September 6, 2023, Doc. 54, attached as **Exhibit 3.**

The robust Notice Program is designed to reach at least 70% of the target audience to ensure class members are provided with adequate notice to make a claim for the cash benefits. Kamenir Decl. at ¶ 16. Additional information regarding the proposed Notice Program and claims process is set forth in Section VI below.

### F. **Right to Object and Opt Out**

Settlement Class members have the right to object to the settlement, subject to compliance with the procedures for objecting, set forth in the settlement agreement. *See* Ex. 1 at § 10. Class members may opt out of the settlement, subject to compliance with the procedures for opting out, set forth in the settlement agreement. *Id.* at § 9.

### G. **Attorney's Fees and Expenses and Plaintiff's Service Award**

Plaintiff's counsel will be applying for, and Defendant has agreed not to object to, an award of attorneys' fees and reimbursement of expenses in an amount not to exceed $350,000. *Id.* at § 5.1. Plaintiff's counsel undertook this case on a contingency-fee basis and stood ready and prepared to litigate this case through trial. Anderson Decl. ¶¶ 4, 13. Plaintiff's counsel's pre-litigation work, expert consultation, and previous litigation experience in the *Stanley Black & Decker* case and *Tuter v. Freud America, Inc.* were critical in securing the proposed class settlement here. *Id.* ¶¶ 12-14.

Plaintiff's counsel also intends to seek Court approval of a service award to the Plaintiff in recognition of his initiative and effort in pursuing the litigation on behalf of other consumers in an amount not to exceed $5,000. Defendant has agreed to pay the service award. Ex. 1 at § 5.2.

## IV. THE COURT SHOULD CERTIFY THE NATIONWIDE SETTLEMENT CLASS

"Class action settlements are premised upon the validity of the underlying class certification." *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir.

11

2004). Class certification is appropriate if the district court finds, after conducting a "rigorous analysis," that the proposed class satisfies the requirements of Fed. R. Civ. P. 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (citation and internal quotation marks omitted). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (citing Fed. R. Civ. P. 23(b)(3)(D)). "But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.*

Here, the Court should certify the Settlement Class because Rule 23(a) and Rule 23(b)(3) are satisfied.

## A. <u>Rule 23(a)(1): The Numerosity Requirement is Satisfied</u>

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); see also *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Numerosity "requires examination of the specific facts of each case and imposes no absolute limitations." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 667 (D. Kan. 2013). A plaintiff seeking class certification "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504 (D. Kan. 2014).

12

Here, the numerosity element is met based on the review of sales information supplied by the Defendant. The sales data shows that the preliminary estimate of the class size during the Class Period is over one-million purchasers of Defendant's products (Anderson Decl. at ¶ 6), and that number is enough to make joinder impracticable. "[N]umerosity does not require plaintiffs to establish the precise number of class members, only that the class is sufficiently numerous." *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 608 (D. Kan. 2014). In *Nieberding*, this court found that plaintiffs had satisfied the numerosity requirement, when the parties stipulated 233 persons belonged to the class. *Id.* Accordingly, Plaintiff satisfies the numerosity requirement.

## B. Rule 23(a)(2): The Commonality Requirement is Satisfied.

Rule 23(a)(2) requires plaintiffs to show "questions of law or fact common to the class." Commonality requires plaintiffs "to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (citation and internal quotation marks omitted). This inquiry requires the Court to find only whether common questions of law or fact exist; unlike Rule 23(b)(3), such questions need not predominate under this element. *See Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991).

In this case, there are several questions of law or fact common to the proposed Settlement Class, including whether, in marketing and selling the Covered Products, Defendant failed to adequately disclose the dangers and risks of using the products after their shelf life; whether Defendant failed to disclose and/or concealed

13

these material facts; and whether the marketing and labeling of the Covered Product was misleading, deceptive, or unfair. Thus, the commonality requirement is satisfied.

### C. <u>Rule 23(a)(3): The Typicality Requirement is Satisfied</u>

Under Rule 23(a)(3), Plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The test of typicality is whether "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010).

"The interests and claims of the representative plaintiffs and class members need not be identical to satisfy typicality." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 263, 281 (D. Kan. 2010), citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982). "If the claims of the representatives and class members are based on the same legal or remedial theory, differing fact situations of class members do not defeat typicality." *Id.*, citing *Stricklin*, 594 F.3d at 1199; *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)); *Jamieson v. Vatterott Educ. Centers, Inc.*, 259 F.R.D. 520, 547 (D. Kan. 2009).

Here, Settlement Class members were subjected to the same allegedly misleading and deceptive conduct as Plaintiff when they all purchased the Covered Products that did not contain a clear warning about the meaning of the date on the Covered Products, and all Settlement Class members allegedly suffered economic injury because the Covered Products were worth less than what they bargained for

(i.e., a product that contained a warning about the meaning of the date). As such, typicality is satisfied.

### D. **Rule 23(a)(4): The Adequacy Requirement is Satisfied**

Rule 23(a) also requires that the representative plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is a twofold requirement: (1) "whether the named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Motor Fuel Temperature Sales Practices Litigation*, 292 F.R.D. at 671.

Here, Plaintiff's interests align with those of other class members, as all class members have an interest in determining whether Defendant acted in an unlawful manner by omitting material facts from the Covered Products and injuring class members as a result. Moreover, nothing demonstrates that Plaintiff or Settlement Class Counsel has a conflict of interest with other class members or that they will have difficulty prosecuting the action in a proper manner. Lastly, Settlement Class Counsel are adequate because they have extensive experience in class action litigation and have vigorously pursued these claims throughout this litigation. Anderson Decl. ¶¶ 9-14. Accordingly, the adequacy requirement is met.

### E. **Rule 23(b)(3): The Predominance and Superiority Requirements are Satisfied**

The proposed Settlement Class also satisfies Rule 23(b)(3)'s requirement that common issues predominate. Under that provision, plaintiff must show that

"questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). This predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *See Amchem Products, Inc.*, 521 U.S. at 623. Specifically, Rule 23(b)(3) is designed to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.*

Here, the question of whether reasonable consumers were misled is a common question to the proposed Settlement Class that predominates over any potential individual questions. It is also a question that can be proven through common evidence through documentary evidence (including the Covered Products' packaging and marketing materials), and Plaintiff's testimony. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

Additionally, the operative Complaint includes a breach of implied warranty claim upon which nationwide certification is sought (Doc. 1 at ¶¶ 81-89). Because the complained-of-conduct is common and uniform among all class members, common questions and common answers predominate here. "The purpose of the implied warranty of merchantability is to protect the 'normal commercial expectations' of the buyer." *Nieberding*, 302 F.R.D. at 611. Accordingly, whether the

alleged defect rendered the product unfit for their ordinary purpose "is judged objectively, and not on each purchaser's individual expectations." *Id*.

The common question on the breach of implied warranty is whether the alleged defective Covered Product (i.e., due to the failure to include an expiration date) renders the bonded abrasive wheel unmerchantable (Doc. 1 at ¶¶ 86-87). That answer can be proven through class-wide proof since Plaintiff alleges all of the Covered Products suffer from the same defect. *Nieberding*, 302 F.R.D. at 611 ("Breach of the implied warranty is therefore susceptible to proof by common evidence on a classwide basis.").

Similarly, the damages are common in that Plaintiff and the Settlement Class members allege that they all suffered the same injury—i.e., they did not receive the benefit of the bargain (Doc. 1 at ¶ 26).

The superiority requirement under Rule 23(b)(3) is also satisfied. In this case, "class members likely have little interest in individually controlling the prosecution of separate actions because the amount at stake for individual class members is small relative to the cost of maintaining a separate action." *In re Motor Fuel Temperature Sales Practices Litigation*, 292 F.R.D. at 674; *see also Amchem Products, Inc.*, 521 U.S. at 617 (explaining that Rule 23(b)(3) classes seek to "vindicat[e] ... the rights of groups of people who individually would be without effective strength to bring their opponents into court at all") (internal citations omitted).

17

Moreover, it is desirable to concentrate litigation in this forum, see Fed. R. Civ. P. 23(b)(3)(C), as opposed to multiple different forums under a variety of states' consumer protection laws. Additionally, this Court has substantial familiarity with the claims and defenses. Thus, Rule 23(b)(3)'s requirements are satisfied.

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The settlement procedure provided for by the Agreement has two distinct steps:

> 1. Preliminary approval and dissemination of notice of settlement; and

> 2. A Final Approval Hearing, at which Plaintiff and other interested parties may be heard regarding the settlement, and at which time evidence and argument concerning the adequacy and reasonableness of the settlement may be presented.

With his Motion, Plaintiff requests that the Court take the first step in the settlement approval process and preliminarily approve the Agreement. *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009)("Preliminary approval of a proposed settlement is the first of two steps required before a class action may be settled.") The purpose of the Court's preliminary evaluation of the proposed Agreement is to determine whether it is within "the range of reasonableness," and thus, whether notice to the Settlement Class members of the terms and conditions of the Agreement and the scheduling of a Final Approval Hearing are appropriate. 4 *Newberg, Class Actions* § 11.25. "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no

18

obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litigation*, 258 F.R.D. at 675 (internal quotation omitted).

Settlement is also particularly appropriate in complex litigation. *See*, 4 *Newberg*, § 11.41 (and cases cited therein); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (*quoting Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). It is well established that the law favors and prefers the compromise and settlement of class action suits. *Schering-Plough Corp. v. F.T.C.*, 402 F.3d 1056 (11th Cir. 2005).

Moreover, as a matter of sound policy, settlements of disputed claims are encouraged. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979); *Velez v. Novartis Pharms. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ("Courts generally favor the resolution of civil actions, particularly class actions, through settlement."). Courts considering settlements do so in light of the strong presumption of favoring compromise of disputes generally, but which:

> is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing

> load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *1–2 (D. Kan. Oct. 26, 2012), *aff'd in part, dismissed in part,* 550 F. App'x 566 (10th Cir. 2013) (quotation omitted).

Thus, under Rule 23, the Court need only find that the settlement falls within the range of possible approval or "the range of reasonableness." *See, e.g.*, *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 633–634 (2d Cir. 1980); *see also* 4 *Newberg,* § 11.25. The *Manual for Complex Litigation*, Fourth (Fed. Judicial Center 2013) (the "*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual*, § 21.632.

In determining whether a proposed settlement is fair, reasonable and adequate, the Court is to consider the following factors:

    (1)    whether the proposed settlement was fairly and honestly negotiated;

    (2)    whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

    (3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

    (4)    the judgment of the parties that the settlement is fair and reasonable.

20

*In re Motor Fuel Temperature Sales Practices Litigation*, 258 F.R.D. at 680 (*citing Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)); *Hershey*, 2012 WL 5306260, at *1. Application of the relevant factors here provides strong support for the adoption of the proposed Settlement.

A. **The Settlement was fairly and honestly negotiated after extensive litigation, discovery, court-ordered mediation, and lengthy and painstaking arms-length negotiations.**

Here, the settlement is the result of arm's-length negotiations among the Parties, with the assistance of an experienced mediator. Anderson Decl. ¶¶ 6-8. Moreover, both before and during the settlement discussions, Settlement Class Counsel ensured that they had adequate discovery and other information necessary to appropriately weigh the strengths and weakness of Plaintiff's claims, as well as to determine the appropriate parameters of a class-wide settlement. *Id.* at ¶¶ 3-6.

Moreover, Settlement Class Counsel have considerable experience in litigating consumer class actions, including abrasive wheel cases lik this, that are similar in size, scope, and complexity to this case, and are thus capable of assessing the likelihood of success, the damages potential, and inherent risks and expense of litigation. *Id.* at ¶¶ 9-13. In light of the foregoing, Plaintiff and their counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class. *Id.* at ¶¶ 13-14. Moreover, Settlement Class Counsel negotiated attorneys' fees and costs only after reaching an agreement on the relief for the Settlement Class. *Id.* at ¶ 7. This is indicative of a fair and arm's-length settlement process. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment (courts may look at "the treatment of any award of attorneys' fees, with

21

respect to both the manner of negotiating the fee award and its terms."); *Cleveland v. Whirlpool Corp.*, 20-CV-1906 (WMW/KMM), 2021 WL 5937403, at *7 (D. Minn. Dec. 16, 2021) (finding "no evidence of collusion or that Class Counsel placed their interests above those of the Settlement Class" when "the material terms of the Settlement were agreed to prior to the Parties' discussion of attorneys' fees, costs and expenses[.]"); *Heilman v. Perfection Corp.*, 93 F. Supp. 2d 1311, 1312–13 (W.D. Mo. 2000) (same).

The efforts of the parties' counsel to resolve this case have resulted in a fair and comprehensive settlement that provides significant monetary relief for Settlement Class members. The settlement is fair, reasonable, adequate, and streamlines a process that would otherwise be inordinately costly and lengthy for both the Court and the parties. Accordingly, preliminary approval of the settlement is appropriate.

### B. There are Serious Questions of Law and Fact that Place the Ultimate Outcome of the Litigation in Doubt, and the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.

There is no question that this case presents serious and difficult questions of law and fact. Defendant vigorously denies the allegations against it. Defendant has and would likely continue to argue that reasonable consumers are not likely to be deceived, that Plaintiff and the class received the full benefit of the bargain, and that even if they were deceived, individualized issues of consumer deception, materiality, and damages preclude class certification.

Despite Defendant's denial of liability, the Agreement obligates Defendant to pay a total of $1,250,000.00 – a substantial amount ensuring that the recoveries by individual Settlement Class members will be meaningful. In light of all of the risks involved in establishing both liability and damages and the costs and delays involved in further litigation, Plaintiff and his counsel believe this settlement to be reasonable and fair.

Another factor considered by Courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). The avoidance of wasteful litigation and expense are two factors that "lay behind the Congressional infusion of a power to compromise." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960); *West Virginia v. Chas. Pfizer & Cos.*, 314 F. Supp. 710 (S.D.N.Y. 1970); aff'd, 440 F.2d 1079 (2d Cir. 1971), *cert. denied*, 404 U.S. 871, 30 L. Ed. 2d 115, 92 S. Ct. 81 (1971).

Had this case been litigated through the class certification stage and trial, it would have been complex, expensive, and lengthy. Fortunately, the parties realized that these expenses would be better utilized through a class-wide settlement. Even still, the complexity, expense, and likely duration of the litigation would have been significant. This is a consumer product defect case that sought class-action status.

By its very nature, the case was complex. It involved the consultation with engineers, material scientists, warning experts, and an economist. Had each expert needed to prepare a report and be deposed, as well as counter Defendant's experts, the expert costs of litigation would have been significant. Additionally, Plaintiff would have been required to depose numerous corporate representatives and in-house manufacturing, design, and sales representatives of Defendant.

The discovery and liability phase of this case would have taken more than a year to litigate. The class certification and choice-of-law briefing would have been equally extensive and time-consuming. In short, this is a complex, expensive, and (would have been a) lengthy case that was resolved after sufficient litigation and discovery occurred which inured to the benefit of the class.

Indeed, Plaintiff's counsel knows this first hand. Our firm has litigated seven other similar abrasive wheel class actions in the Western and Eastern District of Missouri. Anderson Decl. ¶ 12. As mentioned above, Judge Ketchmark recently granted Preliminary Approval in *Tuter v. Freud America, Inc.*, Case No. 4:22-cv-00282 (W.D. Mo. Sept. 6, 2023) (Doc. 54). Similarly, we will soon be presenting another Motion for Preliminary Approval of Class Action Settlement in *Lampton v. Saint-Gobain*, Case No. 22-cv-398-GAF (W.D. Mo. Aug. 10, 2023) (Doc. 39).

Despite these settlements, the other five cases remain pending in various stages of hotly contested litigation, including fact and expert discovery and class certification briefing. *See Hammack, et al. v. Harbor Freight Tools USA, Inc.* Case No. 22-cv-00312-SRB (W.D. Mo, Oct. 13, 2023) (Doc. 59 – Motion for Class

24

Certification); *Holman v. Ali Indus., LLC,* No. 4:22-CV-4133-BCW (Doc. 66 – Order Denying Defendant's Motion to Deny Class Certification)*; May v. Makita U.S.A., Inc.,* 2023 WL 417487 (E.D. Mo. Jan. 26, 2023)*; Shoemaker v. Menard Inc.*, *et al.*, Case No. 22-cv-04089-MDH (W.D. Mo. Oct. 11, 2023) (Doc. 51 – Joint Status Report); *Sartorius v. Hart Consumer Products, Inc.*, Case No. 22-cv-632-CDP (E.D. Mo. June 14, 2022). Anderson Decl. ¶ 12.

In contrast to the delay that would result from extended litigation, trial, and the likely appeal if liability were found, the proposed Agreement will yield a certain, substantial, and prompt monetary recovery for the Settlement Class. Such a result will benefit the parties, the Settlement Class members, and the court system.

### C. <u>Plaintiff's Counsel Judge the Settlement as Fair and Reasonable.</u>

In appraising the fairness of a settlement, the view of experienced counsel favoring the settlement is "entitled to considerable weight." *In re Saxon Sec. Litig.*, 644 F. Supp. 465 (S.D.N.Y. 1985); *see Ring v. Metro. St. Louis Sewer Dist.*, 41 S.W.3d 487, 492 (Mo. Ct. App. 2000); *Boyd v. Bechtel*, 45 F. Supp. at 622; *Linney v. Cellular Alaska P'ship*, 1997 WL 450064 *5 (N.D. Cal. July 18, 1997). If the settlement has been achieved through experienced counsel's arm's-length negotiations, in the absence of fraud, collusion, or the like, the Court should be hesitant to substitute its own judgment for that of counsel. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). Summarizing the holdings in a series of cases, the Court in *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597 (D. Colo. 1974), held: "[c]ourts have consistently refused to substitute their business judgment for that of counsel,

absent evidence of fraud or overreaching….” *Id.* at 624. *Accord Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 169 (S.D.N.Y. 1971).

In light of these substantial risks, the monetary and injunctive relief obtained represents a fair and reasonable recovery for the Settlement Class. Despite substantial obstacles to providing any relief to class members, the proposed settlement offers immediate and complete relief. The reimbursement payments offered under the terms of the settlement are the type of relief Plaintiff hoped to obtain at trial, assuming he prevailed. Settlement Class members who purchased Covered Products may receive up to $2.50 per unit with a total of up to $20 per household without proof of purchase. *See* Ex. 1 at § 3.6(i). And, Settlement Class members who purchased Covered Products and can show proof of purchase may receive up to $100. *Id.* at § 3.6(ii). Considering the small cost of each abrasive wheel (~$5.00) and the typical use by consumers, these cash payments are significant.

This reimbursement is a significant victory for Settlement Class members given the uncertainty of whether Plaintiff would have prevailed at trial and on appeal. Settlement Class members may have been subject to unique defenses (e.g., full benefit of the bargain and/or failure to prove actual damages) that could have severely limited their ability to recover. Additionally, the injunctive relief that Defendant is required to undertake provides substantial relief to the Settlement Class members and the public. *Id.* at § 4. Lastly, all class members retain their right to pursue personal injury claims. *Id.* at § 2.24. When the risks and uncertainties inherent in this litigation are balanced against the benefits provided by the

settlement, Plaintiff submits the settlement easily satisfies the preliminary approval standard.

More still, in addition to the monetary relief, Defendant has agreed to make meaningful changes to its labeling and/or marketing of the Covered Products. *Id.* at § 4; *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("[E]ven if 97 percent of the class did not exercise their right to share in the fund . . . assuming that these class members continue to purchase pet food, they will benefit from the additional injunctive relief that the settlement provides.").

Counsel for Plaintiff are not only experienced litigators, they are also experienced in this type of complex, class action litigation. Further, the settlement of this matter occurred after extensive arm's-length settlement negotiations between Plaintiff's counsel and counsel for Defendant occurring during mediation. Counsel for Plaintiff judge the settlement as fair, reasonable, and adequate.

## VI.    THE COURT SHOULD APPROVE THE NOTICE PLAN AND APPOINT SIMPLURIS AS THE SETTLEMENT ADMINISTRATOR

Due process and Rule 23 require that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Pursuant to the analysis and recommendation of a nationally recognized legal notification firm, Simpluris, specializing in class action administration and notification programs, the parties propose a Notice Program to apprise Settlement Class members of the settlement and their rights thereunder. The four-step program

includes (1) direct e-mail notice, (2) wide-spread internet notice, (3) electronic notice through a dedicated website, and (4) a toll-free interactive hotline. *See* Ex. 2, Kamenir Declaration at ¶¶ 9-16.

First, the e-mail notice will be delivered to likely class members. The e-mail notice will be in the form of the short-form notice. *See* Ex. 2-B at pp. 1-2. The short-form notice will apprise Settlement Class members of their rights, direct them to the settlement website, and instruct them on how to contact the Settlement Administrator for further questions. *Id.*

Second, the Settlement Administrator will run a robust and targeted internet-ad campaign utilizing Facebook and Google to reach Settlement Class members. Banner ads will be run on a number of widely-used websites. *See* Ex. 2, Kamenir Decl. at ¶ 13.

Third, the Settlement Administrator will maintain an internet website (www.BondedAbrasiveDiscClaims.com) for Settlement Class members to visit. The interactive website will allow Settlement Class members to access the settlement agreement, the Court's order preliminarily approving the settlement, the long-form notice, the short-form notice, the electronic version of the Claim Form by which Settlement Class members may submit online, and a timeline of important dates and deadlines. *Id.* at ¶ 14.

Fourth, a settlement-specific toll-free interactive voice response telephone number (1-866-221-3245) will be created to offer class members the opportunity to

listen to frequently asked questions 24 hours a day, and they will also be able to speak directly with a representative during business hours. *Id.* at ¶ 15.

This robust Notice Program will reach a substantial percentage of the class, and provide the best notice practicable under the circumstances, thus satisfying the requirements of the Due Process Clause of the United States Constitution. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985); *see also* Ex. 2, Kamenir Decl. at ¶ 16 ("targeted notice plan…is reasonably calculated to reach at least seventy percent (70%) of the Settlement Class").

## A. <u>The Proposed Notice Is Accurate and Informative</u>

The sufficiency of a class notice is a matter left to the court's discretion. *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001). Under Rule 23(e), a notice of settlement must be issued "in a reasonable manner to all class members who would be bound." The Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. *See* U.S. Const. amend. V; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974). However, neither Rule 23 nor the Due Process Clause requires *actual* notice. *In re Motor Fuel*, 258 F.R.D. at 676. Rather, Rule 23 and due process require that the Court give "the best notice practicable under the circumstance." *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005).

The content of the long-form notice is appropriate. *See* Exhibit 2-C at pp. 1-8. The notice plainly describes the proposed Settlement Class; explains the material

terms of the settlement agreement, including the benefits it provides to the Settlement Class; discloses Settlement Class Counsel's application for attorney's fees and reimbursement of expenses as well as the service award to be requested for Plaintiff; gives notice of the time and place of the Final Approval Hearing; and sets forth the procedures and deadlines for opting out of the Settlement Class and submitting comments and objections. The notice also fulfills the requirement of neutrality in settlement class notices. It summarizes the proceedings to date and makes clear the Court has not ruled on the merits of this Action. Accordingly, the notice displays the fairness, completeness, and neutrality required of a combined settlement-class certification notice disseminated under authority of the Court.

Therefore, the Notice Program, including the short-form notice and long-form notice should be approved.

## VII.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED SETTLEMENT CLASS COUNSEL

Rule 23(g) requires a court to appoint settlement class counsel when it certifies a settlement class. In appointing class counsel, the court considers several factors: (1) work done by counsel in identification or investigation of the claims in the action; (2) counsel's experience; (3) counsel's knowledge of the applicable law; and (4) counsel's resources committed to representing the proposed class. Fed. R. Civ. P. 23(g)(1)(A). Each of these factors militate in favor of appointing Humphrey, Farrington, & McClain, PC ("HFM") as Settlement Class Counsel. First, proposed Settlement Class Counsel spent a significant amount of time identifying and

investigating Plaintiff's claims before commencing the Action. Anderson Decl. ¶¶ 3-4.

Second, as further discussed above and in counsel's declarations, proposed Settlement Class Counsel is experienced in the litigation, certification, trial, and settlement of multi-state consumer class action cases like this one. *Id.* ¶¶ 9-13. In negotiating this settlement, proposed Settlement Class Counsel had the benefit of years of relevant experience and a familiarity with the facts of this case and the substantive case law at issue. *Id.* Finally, HFM is a well-regarded practice that is currently litigating dozens of class action cases in state and federal courts throughout the nation and has devoted substantial resources to representing the Settlement Class. *Id.* Thus, the Court should appoint Plaintiffs' Counsel as Settlement Class Counsel for the Settlement Class.

### VIII.  CONCLUSION

The proposed class action settlement easily meets the standard for preliminary approval. Accordingly, Plaintiff respectfully requests that this Court (1) grant preliminary approval of the proposed class action settlement; (2) appoint the named Plaintiff as class representative and Plaintiff's attorney as Settlement Class Counsel; (3) approve the parties' proposed forms and methods of giving Settlement Class members notice of the proposed settlement; (4) direct that notice be given to Settlement Class members in the proposed forms and manners; (5) set deadlines and procedures for people who fall within the Settlement Class definition to exclude themselves and for Settlement Class members to object to the proposed settlement; and (6) schedule a Final Approval Hearing to determine whether the settlement

should be granted final approval and whether Settlement Class Counsel should be awarded attorney's fees and expenses and the Plaintiff a requested service award. Plaintiff has conferred with Defendant, and Defendant is unopposed to the relief requested herein.

Dated: October 31, 2023

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ *Paul D. Anderson*

Paul D. Anderson KS Federal Bar #78899
Jonathan M. Soper          (*Pro Hac Vice*)
221 W. Lexington, Suite 400
Independence, Missouri 64050
Telephone:    (816) 836-5050
Facsimile:    (816) 836-8966
pda@hfmlegal.com
jms@hfmlegal.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify on this 31st day of October 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record as follows:

Amanda Pennington Ketchum, #20559
DYSART TAYLOR COTTER MCMONIGLE
BRUMITT, & WILCOX, P.C.
700 W. 47 Street, Suite 410
Kansas City, MO 64112
816-931-2700/Tel.
816-931-7377/Fax
aketchum@dysarttaylor.com

*Pro Hac Vice*
Kevin L. Fritz MO Bar #41638
Carolyn M. Kopsky MO Bar #36049
Daniel K. Mannion MO Bar #50627
LASHLY & BAER, P.C.
714 Locust Street
St. Louis, MO 63101
314-621-2939/Tel.
314-621-6844/Fax
Kfritz@lashlybaer.com
cmkopsky@lashlybaer.com
dmannion@lashlybaer.com

*/s/ Paul D. Anderson*
**ATTORNEY FOR PLAINTIFF**