IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DUSTIN CONFER, on behalf<br>of himself and all others<br>similarly situated,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>MILWAUKEE ELECTRIC TOOL CORP.<br><br>　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　　CIVIL ACTION<br><br>No. 23-2028- KHV |

## MEMORANDUM AND ORDER

Dustin Confer brings this putative class action on behalf of himself and all persons who purchased 45 different types of organic bonded abrasive discs designed, manufactured, distributed and/or sold by Milwaukee Electric Tool Corporation that did not include a clear expiration warning or label.[1]  Plaintiff brings claims for violations of the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 et seq. (Count I), and unjust enrichment (Count II) and breach of implied warranty (Count III) under Kansas law.[2]

This matter comes before the Court on Plaintiff's Unopposed Motion For Preliminary Approval Of Proposed Class Action Settlement (Doc. #36) filed October 31, 2023.  Plaintiff seeks (1) preliminary approval of the parties' proposed settlement agreement; (2) appointment of the

---

[1]　　The Settlement Agreement, attached to the declaration of plaintiff's counsel, defines "Covered Products" to include 45 different types of Milwaukee Electric-branded bonded abrasive wheels.  See Settlement Agreement (Doc. #37-2).

[2]　　In his complaint, plaintiff does not expressly state under which state's law his claims for unjust enrichment and breach of implied warranty arise from; however, in his motion for preliminary settlement approval, plaintiff states that the class claims arise under Kansas law. See Suggestions In Support Of Unopposed Motion For Preliminary Approval Of Proposed Class Action Settlement (Doc. #37) filed October 31, 2023 at 2 (plaintiff seeks relief "under [the KCPA] and the Kansas common law claims of unjust enrichment and breach of implied warranty of merchantability, seeking to certify a nationwide class of consumers.").

named plaintiff as class representative and plaintiff's attorney as settlement class counsel; (3) approval of the parties' proposed notice plan; (4) deadlines and procedures for individuals in the proposed class to exclude themselves and object to the proposed settlement; and (5) a final settlement approval hearing date.  For reasons stated below, the Court overrules plaintiff's motion.

**Legal Standards**

**I.      Class Certification**

Class certification under Rule 23, Fed. R. Civ. P., is within the broad discretion of the trial court.  See Shook v. El Paso County, 386 F.3d 963, 967 (10th Cir. 2004).  In deciding whether to certify, the Court performs a "rigorous analysis" whether the proposed class satisfies the requirements of Rule 23.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011).

As the party seeking class certification, plaintiff has the strict burden to affirmatively prove that the requirements of Rule 23 are met.  District of Kansas Local Rule 23.1(a); Dukes, 564 U.S. at 351; Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006).  Plaintiff must first satisfy the prerequisites of Rule 23(a), that is, plaintiff must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class.  Rule 23(a).  After meeting these requirements, plaintiff must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).

Plaintiff seeks to proceed under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members," and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."  In determining predominance and superiority under Rule

-2-

23(b)(3), the Court considers the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Id.  In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D).  See Amchem Prods. v. Windsor, 521 U.S. 591, 620 (1997).  All other requirements apply, however, and demand even heightened attention in the settlement context.  Id. Such attention is vital because in the settlement context, the Court generally lacks an opportunity to adjust the class as it becomes informed by the proceedings as they unfold.  See id.

## II.    Preliminary Approval Of Proposed Settlement

Under Rule 23(e), once a class is certified, the action may not be settled, dismissed or compromised without Court approval.  The Court must grant preliminary approval of a proposed settlement before a class action may be settled.  In re Motor Fuel Temp. Sales Practices Litig., 258 F.R.D. 671, 675 (D. Kan. 2009).  If the Court grants preliminary approval, it directs notice to class members and sets a hearing to make a final determination on the fairness of the class settlement. Id.

At the preliminary approval stage, the Court evaluates the fairness of the proposed settlement and determines whether the proposed settlement is within the range of possible approval, i.e., whether there is any reason not to notify class members of the proposed settlement and proceed with a fairness hearing.  See Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir.

1982); Motor Fuel Temp. Sales Practices, 258 F.R.D. at 675–76.  The Court will ordinarily grant preliminary approval where the proposed settlement appears to be (1) the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.  Freebird, Inc. v. Merit Energy Co., No. CIV.A. 10-1154-KHV, 2012 WL 6085135, at *5 (D. Kan. Dec. 6, 2012).  The standards for preliminary approval of a class settlement are not as stringent as those for final approval.  Id.  The Court is mindful, however, that a higher degree of scrutiny applies when determining the fairness of a settlement negotiated before class certification.  Motor Fuel Temp. Sales Practices, 258 F.R.D. at 676.

In this case, the proposed settlement class has obvious structural deficiencies which preclude preliminary approval.  As a result, the Court need not address other serious concerns such as preferential treatment to the class representative, the sufficiency of the settlement benefits to class members or the reasonableness of plaintiff's fee request.[3]

## Factual And Procedural Background

### I.      Plaintiff's Allegations

The Court incorporates by reference its Memorandum And Order (Doc. #31) filed July 10, 2023, which sets forth the allegations in plaintiff's complaint and the Court's rulings on defendant's motion to dismiss or strike.

Highly summarized, plaintiff alleges that on March 30, 2021, he purchased one of

---

[3]      On this record, the Court is not convinced that even aside from the structural infirmities in the proposed nationwide class, the proposed settlement is within the range of possible approval.

defendant's organic bonded abrasive discs at Home Depot in Olathe, Kansas.[4]  Plaintiff could not use the disc because the disc did not have an expiration warning or label and he did not know whether it had expired.  Because he could not use the disc, it was worthless.  Before selling, distributing or advertising the discs, defendant knew or should have known that the discs did not include a clear expiration warning or label.

On January 24, 2023, plaintiff, individually and on behalf of other persons similarly situated, filed suit against Milwaukee Electric, the designer, manufacturer and distributor of the 45 types of organic bonded abrasive discs characterized as "Covered Products."  Complaint (Doc. #1), ¶ 28.  On behalf of purchasers who bought defendant's discs in Kansas (the "Kansas Sub-Class"), plaintiff brings claims for violations of the KCPA, unjust enrichment and breach of implied warranty.  On behalf of a "Nationwide Class," consisting of customers who purchased the discs anywhere in the United States or its territories, plaintiff brings claims for unjust enrichment (Count II) and breach of implied warranty (Count III).[5]

On March 24, 2023, Milwaukee Electric filed a Motion To Dismiss Or Strike (Doc. #12).

---

[4]        It is unclear what connection defendant has to the Kansas Sub-Class except that it sells Covered Products at Home Depot in Olathe, Kansas.  Defendant is incorporated in Delaware and has its principal place of business in Wisconsin.  Complaint (Doc. #1), ¶ 33; see also Defendant Milwaukee Electric's Memorandum In Support Of Its Motion To Dismiss Count II Of Plaintiff's Complaint And Motion To Dismiss Or Strike Plaintiff's "Nationwide Class" Allegations (Doc. #12) at 10.

[5]        In his complaint, plaintiff defines the Kansas Sub-Class and the Nationwide Class as including individuals who purchased the Covered Products "within the applicable statute of limitations period."  Complaint (Doc. #1), ¶ 53.  Plaintiff does not allege the applicable statute of limitations for either class, however, nor does plaintiff provide a basis for determining the applicable periods for either class.  See id.; see also 1 Newburg On Class Actions § 2:4 (4th ed. 2002) ("To meet the requirements of Rule 23, membership of the class must be distinguishable, or at least definable at the outset.").  Plaintiff has not shown that all states and territories have the same "applicable statute of limitations."  Therefore, the Court has no clue how plaintiff intends to specifically identify individual members of the nationwide class.

On July 10, 2023, the Court overruled the motion.  See Memorandum And Order (Doc. #31).

The parties have since engaged in discovery.  On July 17, 2023, the parties participated in mediation.  See Suggestions In Support Of Preliminary Settlement Approval (Doc. #37) at 8.  On July 17, 2023, the parties reached an agreement in principle and over the next two months they executed a Settlement Agreement.  Id. at 9.  On August 1, 2023, the parties filed their Notice Of Settlement (Doc. #32), informing the Court that they reached a nationwide class settlement.  On October 31, 2023, plaintiff filed his Unopposed Motion For Settlement Of Proposed Class Action (Doc. #36).

As a preliminary matter, the Court notes that plaintiff focuses his motion on the agreed settlement of a nationwide class.  He has not sought stand-alone approval of a settlement for the Kansas Sub-Class, and on this record the Court does not address that scenario.

## II.      Terms Of The Settlement Agreement

The Settlement Agreement contemplates a nationwide settlement class defined as follows:

> [A]ll Persons who purchased one or more Covered Products at retail in the United States and its territories during the Class Period. Excluded from the Settlement Class are: (i) Defendant and its employees; (ii) any Person who properly and timely opts out pursuant to this Agreement; (iii) federal, state, and local governments, including all agencies and subdivisions thereof (but employees thereof are not excluded); and (iv) any judge who presides over the consideration of whether t approve the settlement of this class action and any member of their immediate family.

See Settlement Agreement (Doc. #37-2), ¶ 2.28.  "Covered Products" are Milwaukee Electric-branded bonded abrasive wheels listed in Exhibit A to the Settlement Agreement.  See id. at 25. The "Class Period" is defined as January 1, 2017 through the date that the Court grants preliminary approval (nearly seven years).  Id. at ¶ 2.6.  The settlement class includes over one million purchasers of Milwaukee Electric products.  Declaration Of Paul D. Anderson In Support Of Plaintiff's Unopposed Motion For Preliminary Approval Of Class Action Settlement (Doc. #37-

1), ¶ 6.

Under the proposed agreement, Milwaukee Electric would pay $1,250,000, $1.25 on average per plaintiff, which includes cash payments to all class members who submit a valid claim form (up to $625,000),[6] a service award payment to plaintiff ($5,000) and attorney's fees, costs and expenses (up to $350,000).  Id. at ¶ 3.6, 5.1, 12.1.  The Settlement Agreement also provides that Milwaukee Electric will pay all administrative costs of settlement, including the cost of disseminating notice and distributing settlement payments.  Id. at ¶ 12.2.

In addition to funding the class settlement, Milwaukee Electric agrees to implement several measures to protect class members, future consumers and the public.  Specifically, Milwaukee Electric agrees to (1) put a date code on Covered Products or their labels where feasible,[7] (2) in its relevant operator manuals, add "[d]on't use past the expiration (EXP) date" and (3) review its web site and make modifications to explain the added date codes.[8]  Settlement Agreement (Doc. #37-2) at ¶ 4.1–4.3.  Milwaukee Electric agrees to implement these changes six months after the Court

---

[6]     Members of the class who submit a claim form that includes proof of purchase will have two options to receive cash payments: (1) a cash payment of up to $2.50 per unit purchased up to eight units total, for a maximum amount of $20.00 per household or (2) a cash payment equal to the total amount of such purchases up to a maximum benefit amount of up to $100.00. Settlement Agreement (Doc. #37-2), ¶ 3.6.  If cash payments to all claimants exceed $625,000, the administrator will reduce the amounts pro rata so that the maximum settlement amount is not exceeded.  Id. at ¶ 3.6 (iii).

[7]     If placement of the code is not feasible, Milwaukee Electric will put the date code on the product packaging.  Milwaukee Electric also agrees to "make modifications to the labeling, packaging or marketing of the Covered Products to explain the meaning of the date code on the Covered Products."  Id. at ¶ 4.1.

[8]     "These modifications will remain on Defendant's website so long as Defendant maintains a website and continues to sell the Covered Products.  Defendant will also create a safety guide and place it on its website."  Id. at ¶ 4.3.

enters its final settlement approval order.[9]  Id. at ¶ 4.4.

In exchange for the cash payments and modifications, except for personal injury claims, plaintiff and the putative class agree to release all claims in the complaint, in addition to any claim which "in any way arises out of, is based on, or relates in any way to representations or omissions pertaining to the expiration, shelf-life, or other date on or regarding the Covered Products, including how the date is determined, its length, and what it means."  Id. at ¶ 2.24.

## Analysis

Plaintiff seeks (1) preliminary certification of the proposed settlement class; (2) preliminary settlement approval; (3) approval of the proposed class notice; (4) appointment of class representative and counsel; and (5) a final hearing date for approval of the class settlement. Milwaukee Electric does not oppose the motion.  As noted, the proposed settlement class has obvious structural deficiencies which preclude preliminary certification of a nationwide class.  As a result, the Court need not address requests (2) through (5).

### I.    Class Certification

As noted, plaintiff seeks conditional certification of the following settlement class:

[A]ll Persons who purchased one or more Covered Products at retail in the United States and its territories during the Class Period. Excluded from the Settlement Class are: (i) Defendant and its employees; (ii) any Person who properly and timely opts out pursuant to this Agreement; (iii) federal, state, and local governments, including all agencies and subdivisions thereof (but employees thereof are not excluded); and (iv) any judge who presides over the consideration of whether t approve the settlement of this class action and any member of their immediate family.

See Settlement Agreement (Doc. #37-2), ¶ 2.28.

---

[9]       The Settlement Agreement does not obligate Milwaukee Electric to modify its current inventory or inventory that is manufactured prior to or within six months after the Court enters its final settlement approval order.  Id. at ¶ 4.4.

A.  Rule 23(a) Requirements

1.  Numerosity

Rule 23(a)(1) requires plaintiff to show that "the class is so numerous that joinder of all members is impracticable."  To satisfy this requirement, plaintiff must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. See Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th Cir. 1978).

Based on sales information from Milwaukee Electric, plaintiff asserts that the proposed settlement class consists of "over one-million purchasers of Defendant's products."  Suggestions In Support Of Preliminary Settlement Approval (Doc. #37) at 15.  Although plaintiff has not produced evidence supporting this estimate, he does submit the declaration of counsel in support of the estimate.  See Anderson Declaration (Doc. #37-1), ¶ 6.  On this record, plaintiff satisfies the numerosity requirement.

2.  Commonality

Rule 23(a)(2) requires plaintiff to show that "questions of law or fact are common to the class."  Plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law."  Dukes, 564 U.S. at 350 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  Rather, plaintiff's claim must depend on a "common contention" that is capable of class wide resolution. Id.  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation."  Id. (citation

omitted).[10]  A single common question may satisfy this requirement.  Id. at 359.

Plaintiff asserts that each putative class member suffered the same injury, in that all purchased Milwaukee Electric Covered Products which did not contain an expiration date on the label.  In support of his motion for preliminary approval, plaintiff argues that three common questions arise from this injury: (1) whether Milwaukee Electric failed to adequately disclose the dangers and risks of using its products after their shelf life; (2) whether Milwaukee Electric failed to disclose and/or concealed these material facts; and (3) whether Milwaukee Electric's marketing and labeling of the Covered Products was misleading, deceptive or unfair.  Suggestions In Support Of Preliminary Settlement Approval (Doc. #37) at 15–16.[11]  The extent to which these questions are seriously in dispute is open to question.  The record suggests that Milwaukee Electric did not provide expiration warnings on its abrasive discs or related packaging.  This may be a factual issue, or it may be a fact.  But whether Milwaukee Electric provided information that was "adequate," or was misleading, deceptive or unfair, is a mixed question of fact and law.  This question cannot be answered without consulting the law of 50 states, the District of Columbia and the 16 territories of the United States.

---

[10]      This inquiry requires the Court to find only whether common questions of law or fact exist; unlike under Rule 23(b)(3), questions under Rule 23(a)(2) need not predominate.  See Olenhouse v. Commodity Credit Corp., 136 F.R.D. 672, 679 (D. Kan. 1991).

[11]      Plaintiff's complaint alleges the following additional common questions: (1) whether the products contained the defects described in the complaint; (2) whether defendant adequately tested the products prior to distribution and sales; (3) whether defendant continued to manufacture, market, distribute and sell the products notwithstanding its knowledge of the products' risks after expiration; (4) whether defendant knowingly omitted, suppressed or concealed material facts about the products' unsafe nature; and (5) whether defendant's conduct violated the KCPA.  Complaint (Doc. #1) at 17–18.  The fact that all putative class members purchased Covered Products without expiration dates does not mean that they suffered the same injuries.  Plaintiff has not shown that all states and territories have the same products liability law, and whether any member of the nationwide class suffered injury must be resolved on a state-by-state or territory-by-territory basis.

Plaintiff has not shown that the law of all 50 states, the District of Columbia and 16 territories is identical, or that any common question of law or fact is likely to generate a common answer that will drive resolution of the claims. Accordingly, the commonality requirement is not satisfied.

3.  Typicality

Rule 23(a)(3) requires plaintiff to show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." This element requires that representative plaintiff possesses the same interests and suffer the same injuries as the proposed class members. See Olenhouse, 136 F.R.D. at 680. The claims of the representative plaintiff need not be identical to those of the other class members. See id.; see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183–84 (3d Cir. 2001) (typicality established if claims of named plaintiff and putative class members involve same conduct by defendant). Rather, the Court should look to whether the claims of the representative plaintiffs are "significantly antagonistic" to the claims of the proposed class. Olenhouse, 136 F.R.D. at 680.

Plaintiff asserts that every class member relies on the same legal theory—they all paid full value for the Covered Products even though Milwaukee Electric did not include an expiration date on the products or make clear the risks of using the products after their shelf life—and that his claims as named plaintiff are typical of claims of the nationwide class. Suggestions In Support Of Preliminary Settlement Approval (Doc. #37) at 16–17.

A significant obstacle to typicality, and one that plaintiff's motion does not address, is what law governs the claims of the various class members and whether the laws of all states, the District of Columbia and all territories impose the same standards for liability and damages. Plaintiff brought claims for violations of the KCPA and Kansas state law claims for unjust enrichment and

breach of implied warranty.  See id. at 2 (representative "sought relief under [the KCPA] and the Kansas common law claims of unjust enrichment and breach of implied warranty of merchantability").  Because plaintiff brought this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), Kansas choice of law rules apply.  Complaint (Doc. #1), ¶ 34; Speed v. JMA Energy Co., LLC, 872 F.3d 1122, 1126 (10th Cir. 2017) (CAFA expands federal diversity jurisdiction); see also Savedoff v. Access Group, Inc., 524 F.3d 754, 760 n.5, 762 (6th Cir. 2008) (applying forum state's choice of law provisions where federal jurisdiction premised on 28 U.S.C. § 1332(d)(2)(A)).  Under Kansas choice of law rules, the Court's first inquiry is whether a true conflict exists among the state laws that could be applied to the claims.  See Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co., 2000 WL 34001583, at *1 (D. Kan. Jul. 24, 2000).  In other words, the Court cannot apply Kansas law to the claims of the nationwide class unless Kansas law is consistent with other state law and constitutional concerns are also satisfied. See id.

Plaintiff did not address choice of law issues and even a cursory examination suggests that his Kansas state law claims are not typical of the claims of a million class members who bought 45 different products in 49 other states, the District of Columbia and 16 territories.  Accordingly, plaintiff has not satisfied the typicality requirement.

### 4.  Fair And Adequate Representation

Rule 23(a)(4) requires plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiff and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class. Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).

Regarding the first factor, plaintiff asserts that no conflicts exist between the representative and class members because "all class members have an interest in determining whether Defendant acted in an unlawful manner by omitting material facts from the Covered Products and injuring class members as a result." Suggestions In Support Of Preliminary Settlement Approval (Doc. #37) at 17. The Court's typicality reasoning requires it to conclude that plaintiff has not shown that he adequately represents the interests of the purported nationwide class. Given the different laws that apply to the putative class claims, plaintiff has not shown that his interests do not significantly diverge from those of the proposed nationwide class. Thus, plaintiff has not satisfied the first adequacy factor, and the Court need not address the second adequacy factor.

B. Rule 23(b) Requirements

In addition to satisfying the prerequisites set forth in Rule 23(a), parties seeking class certification must meet the requirements of either Rule 23(b)(1), (2) or (3). Amchem, 521 U.S. at 623. Plaintiff requests that the Court certify a nationwide settlement class under Rule 23(b)(3). Rule 23(b)(3) has two prongs: predominance and superiority.

1. Predominance

The predominance prong "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating, individual issues." CGC Holding Co., LLC v. Broad & Cassel, 773 F.3d 1076, 1087 (10th Cir. 2014). The commonality and predominance requirement inquiries are similar, but the predominance requirement is "far more demanding." Amchem, 521 U.S. at 623–24. The Court must first identify "the elements of the underlying cause of action" before analyzing whether the issues presented are susceptible to resolution with common evidence or legal determinations. Black v. Occidental Petroleum Corp., 69 F.4th 1161, 1175 (10th Cir. 2023) (citation omitted).

Plaintiff asserts claims for violations of the KCPA, and Kansas law claims for unjust enrichment and breach of implied warranty.  He seeks to certify a nationwide class of purchasers, however, in Kansas, 49 other states, 16 territories and the District of Columbia.  Without reference to any specific claim, plaintiff generally argues that the proposed class meets the predominance requirement because the question of "whether reasonable consumers were misled" is a common question that predominates over individual questions.  Suggestions In Support Of Preliminary Approval Of Settlement (Doc. #37) at 18.  Plaintiff also contends that he can prove this question through common evidence, such as documentary evidence of Covered Products packaging and marketing materials and his own testimony.  Id.

While the factual issues may be similar in all cases (e.g., whether Milwaukee Electric failed to disclose risks), the legal standards governing the class claims are not the same.  First, plaintiff's KCPA claim under Count I cannot meet the predominance requirement for a nationwide class because (1) according to the KCPA's definition of "consumer transactions," K.S.A. § 50-624(c), the KCPA limits liability under K.S.A. §§ 50-626 and 50-627 to violations that occurred in the course of consumer transactions that took place in Kansas and the putative class includes consumers who made their purchase elsewhere;[12] and (2) the Court can take judicial notice that "substantial conflicts" exist between the KCPA and consumer protection laws in other states.  See Thompson v. Jiffy Lube Int'l, Inc., 250 F.R.D. 607, 626 (D. Kan. 2008).

Second, as to plaintiff's Count II unjust enrichment claim, differences among state law definitions of unjust enrichment and its availability as a remedy make federal courts, in general,

---

[12]     The record does not disclose how many putative class members are included in the Kansas Sub-Class, but presumably the vast majority of putative class members have no relationship to Kansas and made no purchases here.

reluctant to certify nationwide classes on this theory.  See id. ("Because of such variations [among state laws], federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment.").[13]

Plaintiff's claim for breach of the implied warranty of merchantability under Count III suffers the same fate due to wide variations between various state laws, including differences in privity requirements, elements of proof, the definitions for "merchantability," class action availability and applicable statutes of limitations.  See In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig., No. 19-2875 (RBK/SAK), 2023 WL 1818922, at *58 (D. N.J. Feb. 8, 2023) (collecting cases denying class certification of proposed multi-state implied warranty classes).  The statute of limitations issue is especially vexing, because plaintiff proposed a "Class Period" of nearly seven years—which has no stated correlation to any statute of limitations for a breach of implied warranty claim in any state, territory or the District of Columbia.

Here, variations in state law "swamp any common issues and defeat predominance."  Cole v. Gen. Motors Corp., 484 F.3d 717, 724 (5th Cir. 2007) (internal quotations and citations omitted).  Accordingly, the onus on plaintiff was to "provide an extensive analysis of state law variations" to establish that they do not pose insuperable obstacles to classwide relief.  Id.[14]  Plaintiff has not engaged in such an analysis, so he has not established predominance.

_____

[13]       These differences among state law definitions of unjust enrichment include, but are not limited to, whether a plaintiff conferred a benefit *directly* on defendants, whether the type of alleged misconduct satisfies a particular state law, whether a plaintiff complied with different statutes of limitations and whether plaintiffs may maintain an unjust enrichment claim if they have another available remedy at law.  See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig., No. 17-MD-2785-DDC-TJJ, 2020 WL 1873989, at *58 (D. Kan. Feb. 27, 2020).

[14]       Alternately, plaintiff could have recruited 49 class representatives from other states, 16 territories and the District of Columbia to represent 66 sub-classes to account for legal variation from jurisdiction to jurisdiction.

### 2.  Superiority

In addition to predominance under Rule 23(b)(3), plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  If class treatment will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," then it is superior to other methods.  CGC Holding, 773 F.3d at 1096.

Plaintiff states that a class action is superior to other available methods because (1) the amount at stake for individual class members is small relative to the cost of maintaining separate actions, (2) it is desirable to concentrate litigation in one forum so that one state's consumer protection laws apply and (3) this Court has substantial familiarity with the claims and defenses presented.  Suggestions In Support Of Preliminary Approval Of Settlement (Doc. #37) at 20.  The Court disagrees.  Plaintiff has not shown that his claims are typical of the putative class or that common issues will predominate.  Therefore, he has not shown that a nationwide class action is superior to other methods for adjudicating (or settling) this case.

## II.    Conclusion

For the reasons discussed, plaintiff has not met the requirements for class certification under Rule 23(a) or (b)(3).  In light of this ruling, the Court does not address other aspects of the proposed settlement.

**IT IS THEREFORE ORDERED** that Plaintiff's Unopposed Motion For Preliminary Approval Of Proposed Class Action Settlement (Doc. #36) filed October 31, 2023 is **OVERRULED.**

**IT IS FURTHER ORDERED** that this case be set for trial on the docket beginning December 2, 2024 in Kansas City, Kansas.  No later than 5:00 P.M. on Monday, December 11,

2023, counsel shall contact Magistrate Judge Angel D. Mitchell to initiate further pretrial proceedings.

Dated this 7th day of December, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge